UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MICHAEL TEAHAN,<br><br>    Petitioner,<br>v.<br><br>V.M. ALMAGER, Warden,<br><br>    Respondent. | Civil No.07cv586-WQH(NLS)<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 7] |

  Paul Michael Teahan ("Petitioner") is a California prisoner serving a term of forty-two years to life after being convicted on multiple counts of attempted murder and assault with a firearm. On March 29, 2007, he filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence [Doc. No. 1]. Respondent filed a Motion to Dismiss the Petition [Doc. No. 7], arguing that the petition is barred by the applicable statute of limitations and therefore should be dismissed with prejudice. Petitioner filed an opposition and lodged documents in support [Doc. Nos. 8 & 9]. Petitioner concedes that his federal petition is untimely, but argues that the Court may consider the merits of his otherwise time-barred claims because he is actually innocent and thus entitled have his claims heard under the "miscarriage of justice" exception. After a thorough review, the Court **RECOMMENDS** that Respondent's Motion be **GRANTED** and the Petition be **DISMISSED** with prejudice as untimely.

///

///

# BACKGROUND

On May 15, 1995, Petitioner was convicted of five counts of attempted second degree murder in violation of California Penal Code sections 664/187(a), as well as four counts of assault with a firearm in violation of California Penal Code section 245(a)(2). [*Petition*, 1-2.] Petitioner was sentenced to an aggregate terms of forty-two years to life. [*Id.* at 1.] The following statement of facts is taken from the California state appellate court opinion denying Petitioner's direct appeal of his conviction. [*Lodgment No. 1* (*People v. Teahan*, No. D024421, (Cal.Ct.App. Oct. 23, 1996)).] This Court gives deference to state court findings of fact. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

> "During the late afternoon of April 23, 1994, eight to ten Filipino males were playing basketball at the Montgomery (Lucky) Waller Community Center in Chula Vista. The majority of these individuals were affiliated with either the Insane Pinoy Tribe (IPT) street gang or the Oriental Boy Soldier (OBS) street gang.
> A group of Hispanic males approached the Filipinos on the basketball court. A verbal exchange, including loud screaming, ensued and the two groups flashed gang signs. Some of the Filipinos left the basketball court and chased the Hispanics, who left the area. The Filipinos resumed playing basketball.
> About 30 to 45 minutes later, three Hispanic youths approached the basketball courts. Again there were verbal exchanges between the Hispanics and the Filipinos, and gang signs were flashed. The Hispanic youths backed away from the courts while motioning the Filipino youths to come out as well. Two of the Filipinos left the courts and approached the sidewalk. One of them, Chris Alvarez, was holding his hand behind his back. Meanwhile, the three Hispanics continued to back away, moving toward the parking lot.
> One of the Hispanic youths – identified at trial as Teahan – was wearing a serape or poncho. [footnote omitted.] He lifted his garment and produced a shotgun. He fired at least twice in rapid succession from a hip position. The Filipino youths turned and ran away, and the others in the area either ran or dropped to the ground. The shooter lifted the shotgun and fired again.
> Alvarez, an ITP gang member, was shot in the knee.
> Anthony Tindugen, an IPT gang member, was hit in the forearm and foot by shotgun pellets.
> Vincente Foster, an IPT gang member, was struck twice in the left leg and once in the right leg with shotgun pellets.
> Dennis Santos, an IPT gang member, was shot in both legs with wounds ranging from the ankle to the upper thigh.
> Joel Asuncion, who was associating with the IPT members that day, was shot in the right upper thigh.
> Michael Lopez, Daniel Sarmiento, Kenneth Romasoc, and Julius Colico, all of whom were playing basketball with the IPT and OBS gang members, either ran or dropped to the ground when they heard the gunfire. None of these individuals was struck by any shotgun pellets.
> Toward the end of the confrontation, one of the Filipinos ran to a basketball hoop on the court and pulled out a handgun from a bag or a piece of clothing on the ground. The gun had a blue rag tied around it. The Filipino ran halfway across the court and fired the gun as the Hispanics ran away.
> Four expended shotgun shell casings were found at the scene. Three of the casings were 12-gauge, red in color, Estate brand cartridges. The fourth casing was green in color,

>12-gauge and Remington Peters brand.
>Teahan is a member of the Del Sol gang, which claims Lucky Waller Park as part of its territory.
>During a search of Teahan's residence, officers found two Estate brand 12-gauge shotgun shells."

[*Lodgment No. 1*, 2-4.]

Petitioner appealed, arguing there was insufficient evidence at trial that he harbored the requisite specific intent to kill to support his attempted murder convictions and that the trial court's failure to instruct the jury pursuant to CALJIC No. 2.27 (that the testimony of a single witness is sufficient to prove a fact) was reversible error. [*Id* at 4, 11.] On October 23, 1996, the appellate court rejected these arguments and affirmed Petitioner's convictions and sentence. [*Id*. at 13.] After his direct appeal was completed, Petitioner filed a Petition for Review with the California Supreme Court raising the single claim that the trial court committed prejudicial error by instructing the jury on the doctrine of transferred intent pursuant to CALJIC No. 8.65 in an attempted murder case. [*Lodgment No. 2* at 19.] On January 15, 1997, the California Supreme Court denied the petition without comment. [*See Lodgment No. 3*.] On September 23, 2004, Petitioner filed a Petition for Writ of Habeas Corpus with the Superior Court, raising the single claim that the trial court erroneously admitted an in-court identification which was the product of an impermissibly suggestive pretrial photo lineup in violation of his due process rights. [*Lodgment No. 4* at 3.] The court denied the petition, citing Petitioner's failure to raise the issue on direct appeal. [*Lodgment No. 5*, 3.] On January 12, 2005, Petitioner filed a habeas petition with the Court of Appeal, raising the same ground for relief. [*Lodgment No. 6*, 3.] The appellate court denied the petition, based on Petitioner's failure to raise the issue on direct appeal and due to Petitioner's substantial and unjustified delay in filing the petition eight years subsequent to the court's denial of his direct appeal. [*Lodgment No. 7*, 2-3.] Finally, on June 14, 2006, Petitioner filed a habeas petition with the California Supreme Court, raising two grounds for relief: (1) the erroneous admission of the in-court identification, raised below, and (2) ineffective assistance of appellate counsel. [*Lodgment No. 8*, 3-4.] The state supreme court denied the petition as untimely, citing *In re Robbins* (1998) 18 Cal.4th 770, 780. [*See Lodgment No. 9*.] Finally, on February 27, 2007, Petitioner filed another habeas petition with the state superior court, alleging that his sentence violated his Sixth Amendment right to a jury trial pursuant to *Cunningham v. California*, 127 S.Ct. 856 (2007). [*See Lodgment No. 10*.]

1    Following the denial of his state petitions, Petitioner filed this federal Petition on March 29,
2    2007, raising three grounds for relief: (1) ineffective assistance of appellate counsel, (2) violation of his
3    due process rights based on the trial court's erroneous admission of a false identification into evidence,
4    and (3) violation of his Sixth Amendment rights based on the trial court's error in imposing a mid-term
5    sentence by finding aggravating factors to be true without a jury trial. [*Petition*, 6-8.] Respondent
6    moves to dismiss the Petition, arguing that it is untimely, having been filed nearly nine years after the
7    expiration of the applicable statute of limitations. [*Memorandum of Points and Authorities in Support of*
8    *Motion to Dismiss ("Respondent's Memorandum")*, 4.] Petitioner has filed an Opposition and
9    Lodgment in support. Petitioner does not dispute the lengthy delay in filing his federal petition, but
10   urges the Court to excuse the delay and consider the petition on its merits pursuant to the "miscarriage
11   of justice exception to a procedural bar." [*Petitioner's Opposition*, 2.]

## ANALYSIS

13   This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act
14   of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will
15   not be granted with respect to any claim adjudicated on the merits by the state court unless that
16   adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of
17   clearly established federal law; or (2) resulted in a decision that was based on an unreasonable
18   determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C.
19   § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal habeas court may grant relief under the
20   "contrary to" clause if the state court applied a rule different from the governing law set forth in
21   Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially
22   indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the
23   "unreasonable application" clause if the state court correctly identified the governing legal principle
24   from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.
25   *Id.* Additionally, the state court's factual determinations are presumed correct, and the petitioner carries
26   the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).
27   The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal
28   petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, Section 2244, subdivision (d)

reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondent contends the statute of limitations began to run when the judgment became final at the conclusion of direct review as defined in § 2244(d)(1)(A). Respondent contends that because there is no basis for tolling, the instant action was filed approximately nine years late. [*Respondent's Memorandum*, 4.]

    *a)*    *The Statute of Limitations began to run on April 16, 1997*

Following the conclusion of Petitioner's direct appeal, the California Supreme Court denied further review on January 15, 1997. [*See Lodgment No. 3*.] Thus, Petitioner's case became final on April 15, 1997, when the ninety-day period for seeking review in the United States Supreme Court expired. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The statute of limitations as calculated under § 2244(d)(1)(A) began to run the next day, April 16, 1997. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner had until April 16, 1998, absent applicable statutory or equitable tolling, within which to file his federal petition for writ of habeas corpus.

Petitioner does not argue, and the Court finds nothing in the record, to support an alternative calculation of the statute of limitations under § 2244(d)(1)(B). Petitioner does not appear to have been

hampered in any manner in challenging his conviction due to state action; rather, it seems to have been Petitioner's own lack of diligence which caused his federal petition to be untimely. Petitioner also has not alleged any state-created barrier which interfered with his ability to challenge his conviction, and the Court therefore finds nothing to support an alternative calculation of the statute of limitations under § 2244(d)(1)(C).

In his opposition, Petitioner admits that his petition is untimely, and does not expressly argue for the calculation of an alternative statute of limitations under § 2244(d)(1)(D) either. However, Petitioner contends that he did not discover the factual and legal basis for his current claims until "early 2004," and since that time has pursued his claims diligently. The Court notes that this argument could be interpreted as a request to calculate the statute of limitations from the date Petitioner became aware of the factual predicate of his claim within the meaning of § 2244(d)(1)(D). Specifically, Petitioner states that in 2004 he discovered a "large discrepancy in the photo lineup introduced into evidence at trial by the prosecution." [*Petitioner's Opposition*, 8.] However, the factual predicate for his current claims did not arise when he "learned" of the allegedly impermissibly suggestive photo lineup; rather, the factual predicate for the three claims presented in the current federal petition existed at the time of his trial. To the extent Petitioner contends he was not aware of the factual predicate for these claims, such contentions are without merit for the reasons discussed below with respect to equitable tolling.

Accordingly, the Court finds that the statute of limitations began to run as to Petitioner's claims on April 16, 1997, the day after his conviction became final. Absent tolling of the statute of limitations, therefore, the last day Petitioner could have timely filed a federal habeas petition would have been April 16, 1998. Petitioner initiated this action on March 29, 2007, the date he handed his federal habeas petition to the prison authorities for mailing to the Court. Absent tolling, the instant action was commenced nearly nine years late.

*b)    Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)*

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). This statutory tolling will apply if a state habeas petition has been properly filed. *Artuz v. Bennett*, 531 U.S.

4, 8 (2000) (holding that a properly filed state application complies with the applicable laws and rules governing filings, including the form of the application and time limitations). In *Carey v. Saffold*, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214 (2002); *see also Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); *Welch v. Newland*, 267 F.3d 1013, 1016 (9th Cir. 2001) ("tolled period includes intervals between the disposition of a state court petition and the filing of a subsequent petition at the next state appellate level"); *Patterson v. Stewart*, 251 F.3d 1243, 1247 (9th Cir. 2001) (stating that the "AEDPA's one-year grace period is tolled during the pendency of properly filed state petitions challenging the judgment or claim at issue."); *cf. Dils v. Small*, 260 F.3d 984, 986 (9th Cir. 2001) (court found no tolling between consecutive filings at the same level); *Lewis v. Mitchell*, 173 F.Supp.2d 1057, 1061 (C.D.Cal. 2001) (holding that the interval between a motion for sentence modification in the state superior court and a habeas petition in the superior court was not tolled pursuant to 28 U.S.C. § 2244(d)(2)).

Here, Petitioner did not file his first state habeas petition challenging his conviction and sentence until September 23, 2004, approximately six and a half years after the one-year limitations period for filing a federal habeas petition expired. [*See Lodgment No. 4*.] Petitioner's second state habeas petition was filed on January 12, 2005, and was denied in part due to its untimeliness. [*See Lodgment No. 6*; *Lodgment No. 7*, 2.] Petitioner embarked on collateral review in the state courts after the statute of limitations for filing his federal habeas petition had already expired (absent equitable tolling during the first year the limitations period was running), and he therefore is not entitled to statutory tolling for the time the lower state court petitions were pending. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

    *c)*    *Equitable Tolling*

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *see also Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Calderon v. U.S. Dist. Ct. (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998), *citing*

*Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996).  Petitioner bears the burden of alleging facts that would give rise to tolling.  *Pace*, 544 U.S. 408; *Smith v. Duncan*, 297 F.3d 809 (9th Cir. 2002); *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."  *Lott v. Mueller*, 304 F.3d 918, 922 (9th Cir. 2002) (*quoting Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999)).  In *Allen v. Lewis*, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness."  More recently, the Ninth Circuit reaffirmed this rule in *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).  In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate."  *Id.*

Respondent contends that Petitioner has failed to carry his burden of demonstrating that he is entitled to equitable tolling because at the time Respondent filed the pending motion to dismiss, Petitioner had not stated any grounds for equitable tolling.  [*Respondent's Memorandum*, 5.]  Petitioner does not argue explicitly that the limitations period should be equitably tolled.  However, as mentioned previously, Plaintiff argues that a fundamental miscarriage of justice will occur if the Court does not review this claim on the merits because he discovered new evidence of his innocence in 2004 regarding a tainted photo lineup, and cites the Supreme Court holding in *Schlup v. Delo*, 513 U.S. 298 (1995), in support.

Petitioner's opposition cites at length from case law regarding actual innocence.  [*Petitioner's Opposition*, 2-7.]  Therefore, although his argument is not entirely clear, the Court shall assume that Petitioner contends he is actually innocent of the crimes of which he was convicted.  The Ninth Circuit has left open the possibility that a petitioner who can satisfy the "actual innocence gateway" of *Schlup v. Delo*, 513 U.S. 298 (1995), can have the merits of his federal habeas claims heard notwithstanding the failure to file the federal petition within the one-year statute of limitations.  *Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2003).  The Court need not resolve this open issue, however, because Petitioner has not satisfied the *Schulp* gateway.

"Actual innocence" means factual innocence, not merely legal insufficiency; a mere showing of

reasonable doubt is not enough. *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997). To show actual innocence, Petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

Petitioner contends that he is entitled to have his petition considered on the merits in spite of its untimeliness because "no rational factfinder would have found him guilty beyond a reasonable doubt in light of all the now available evidence." [*Petitioner's Opposition*, 2.] Petitioner further states that he "was elsewhere at the time of the shooting ... six people could attest to Petitioner being elsewhere at the time the shooting occurred." [*Id*. at 10.] Petitioner goes on to state that his trial counsel knew about these alibi witnesses and was able to interview four of them prior to trial, which defeats his claim. [*Id*. at 11.] Petitioner advances no "**new** reliable evidence" that was **not** presented at trial to support the claim that he is actually innocent of the crime. *See Schlup*, 513 U.S. at 324. As such, he cannot succeed on this theory and have his petition heard on its merits.

Accordingly, the Court finds that Petitioner has not carried his burden of demonstrating that he is entitled to equitable tolling of the statute of limitations and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** on the basis that this action was commenced after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1).

## CONCLUSION

Based on the foregoing, Petitioner's claims are barred by the one-year statute of limitations in Title 28, United States Code, section 2244(d). Therefore, the undersigned Magistrate Judge recommends that respondent's Motion to Dismiss be **GRANTED** and that the Petition be **DISMISSED** with prejudice as untimely.

This report and recommendation by the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than *September 28, 2007* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *October 5, 2007*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: August 28, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge